defendant admits that the title to the note was transferred to the plaintiff; and without setting up facts to avoid the effect of such an admission, and to show the transfer of the note from the plaintiff to the defendant Quincy, he cannot raise an issue of fact by the affirmative statement of conclusions of law. The facts must be alleged from which such conclusions of law could have been drawn. Conselyea v. Swift, 103 N. Y. 604, 9 N. E. 489; Saunders v. Chamberlain, 13 Hun, 568.

The interlocutory judgment should be reversed, with costs, and the demurrer to the third separate defense sustained, with costs, with leave to the defendant to answer over within 20 days upon payment of costs in this court and in the court below.

VAN BRUNT, P. J., and PATTERSON and McLAUGHLIN, JJ., concur.

LAUGHLIN, J. I dissent on the ground that Quincy, having paid the note, became subrogated to the rights of the plaintiff, and that he is now the real party in interest, and may maintain an action thereon against the respondent Brooks, who was a prior indorser.

_____

(63 App. Div. 128.)

PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. PRIEST et al.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

TAXATION—SPECIAL FRANCHISE—STATE BOARD OF TAX COMMISSIONERS—VALUATION—CERTIORARI—RETURN OF WRIT.

    Laws 1899, c. 712, § 45, provides that an assessment of a special franchise by the state board of tax commissioners may be reviewed by certiorari in the manner prescribed by Laws 1896, c. 908, § 251 (Tax Law), which requires that the writ in such cases be made returnable to a special term of the supreme court of the judicial district "in which the assessment complained of was made." Laws 1899, c. 712, § 42, provides that the state board of tax commissioners shall determine the valuations of special franchises, and certify them to the local assessors, who shall enter the same on the assessment rolls. _Held_, that a writ of certiorari to review the valuation of a special franchise should be made returnable to the court of the judicial district in which the tax is collectible, and not to that of the district where the board has its office.

Appeal from special term, New York county.

Certiorari by the people, on the relation of the New York Central & Hudson River Railroad Company, against George E. Priest and others, constituting the state board of tax commissioners, to review the action of such board in fixing the valuation of a special franchise. From an order of the special term quashing the writ, relator appeals. Reversed.

Argued before O'BRIEN, HATCH, INGRAHAM, and LAUGHLIN, JJ.

Ira A. Place, for appellant.
Henry B. Coman, Dep. Atty. Gen., for respondents.

INGRAHAM, J. The order appealed from quashed a writ of certiorari issued at the special term of the supreme court to review the

action of the respondents in "fixing and determining the valuation of a special franchise subject to assessment." The question presented is whether the supreme court in this district has power to review the action of the respondents which fixed and determined the value of a special franchise subject to assessment for taxation. We have held in the case of People v. Feitner, 53 App. Div. 181, 65 N. Y. Supp. 935, that a writ of certiorari issued under section 251 of the tax law (chapter 908, Laws 1896) to review the determination of the board of taxes and assessments of the city of New York upon the property of a corporation within the city of New York must be made returnable at the special term in the First judicial district, and we have now to determine whether a writ issued under section 45 of the tax law is required to be made returnable in the First or Third judicial district. Entertaining the views hereafter expressed, it will not be necessary to determine whether such a writ, when properly issued, but returnable at a special term in a district other than required by the tax law, should be quashed, or the writ amended by making it returnable in the proper district, as we think the writ was properly returnable in the First judicial district. The provisions of the tax law for the assessment of a special franchise held by a corporation was added in the year 1899. Chapter 712, Laws 1899, amended by chapter 254, Laws 1900. These provisions thereby became a part of the tax law of the state, and in ascertaining the intent of the legislature we must consider the tax law as a whole. Section 2 thereof, as amended, provided that "real estate" and "real property," as used in the chapter, shall include all franchises, rights, or permission to construct, maintain, or operate bridges, telegraph lines, surface, underground, or elevated railroads, mains, pipes, and tanks for conducting steam, heat, water, oil, electricity, or any property, substance, or product, and the section then provides that a franchise, right, authority, or permission specified in the subdivision shall, for the purpose of taxation, be known as a "special franchise." Section 42 of the act provides that:

"The state board of tax commissioners shall annually fix and determine the valuation of each special franchise subject to assessment in each city, town or tax district. After the time fixed for hearing complaints the tax commissioners shall finally determine the valuation of the special franchises, and shall file with the clerk of the city or town in which said special franchise is assessed a written statement duly certified by the secretary of the board of the valuation of each special franchise assessed therein as finally fixed and determined by said board. * * * In the city of New York such statement shall be filed with the department of taxes and assessments. * * * The valuations of every special franchise as so fixed by the state board shall be entered by the assessors or other officers in the proper column of the assessment-roll before the final revision and certification of such roll by them, and become part thereof with the same force and effect as if such assessment had been originally made by such assessor or other officer. If a special franchise assessed in a town is wholly within a village, the valuation fixed by the state board for the town shall also be the valuation for the village."

Provision is then made for the village assessors to determine what portion of the valuation of such franchise, as the same has been fixed by the state board, shall be placed upon the tax roll for village pur-

poses, where a part only of such special franchise is in the village; and provision is also made for an apportionment among school districts, and the section then continues:

"The valuation so fixed by the state board shall be the assessed valuation on which all taxes based on such special franchise in the city, town or village, for the state, municipal, school or highway purposes shall be levied during the next ensuing year."

Section 31 of the act prescribes how corporations shall be assessed. The provision is that "the assessors shall assess corporations liable to taxation in their respective tax districts upon their assessment rolls in the following manner": In the first column, the name of each corporation, and under its name the amount of its capital stock paid in, the amount paid by it for real property, the amount of all surplus profits or reserved funds exceeding 10 per cent. of their capital, after deducting therefrom the amount of said real property and the amount of its stock, if any, belonging to the state and to incorporated literary and charitable institutions; in the second column, the quantity of real property, except special franchises, owned by such corporations, and situated within their tax district; in the third column, the actual value of such real property, except special franchises; in the fourth column, the amount of the capital stock paid in and secured to be paid in, and of all such surplus profits or reserve funds as aforesaid; and, in the fifth column, the value of any special franchises owned by it as fixed by the state board of tax commissioners. It will be noticed here that the action of the state board of tax commissioners is not designated as making any assessment. They are required to fix and determine the value of each special franchise subject to assessment, and after the time fixed for hearing complaints the tax commissioners are directed to finally determine the valuation of the special franchises, and file with the clerk of the city or town in which said special franchises are assessed a written statement, duly certified by the secretary of the board. A preliminary step to ascertain the value of a special franchise takes the place of the provisions of sections 20 and 21 of the act by which the assessors in each tax district are to ascertain all the property, and the names of all persons taxable therein, and the value of such property. There is as yet, however, no assessment for taxation. The preliminary steps have been taken by the assessors in their several assessment districts of ascertaining the property and names of the persons taxable therein, and the value of the property. The subsequent sections of the article then provide how corporations and individuals shall be assessed. Section 31 provides for the assessment of corporations liable to taxation, the value of the property taxable having been ascertained. Section 35 provides that the assessors shall complete the assessment roll within a time specified, and give notice thereof. Section 36 provides that they shall hear and determine all complaints in relation to such assessment, except in relation to a special franchise assessment; and by section 44 the state board of tax commissioners are required to hear and determine any complaint concerning such assessment. After the correction of the roll, it is to be verified by the assessors (section 37), and filed in the office of the city clerk (section 38), and it

thereby becomes a public record; and by section 55 the board of supervisors are to levy the taxes for the county from this assessment roll.    Section 45 provides for a review of the action of the state board.    It is there provided that an assessment of a special franchise by the state board of tax commissioners may be reviewed in the manner prescribed by article 11 of this chapter, and that article applies, so far as practicable, to such an assessment.    When the board of assessors determines the value of the property assessed, their action can be reviewed by a writ directed to them; but, when it is sought to review the action by which the value of a special franchise has been fixed, the writ must run to the board that has fixed that value.    The action of the state board is, however, to be reviewed in the manner prescribed by article 11 of the chapter; that article to apply "in the same manner, and with the same force and effect, as if the assessment had been made by the local assessors."    Article 11 provides a system for a review of the assessment of property for taxation.    Section 250 provides for the petition upon which a writ for that purpose shall be granted.    It is then provided that "any person assessed upon any assessment roll, claiming to be aggrieved by any assessment for property therein, may present to the supreme court a petition duly verified."    Section 251 provides that "such petition must be presented to a justice of the supreme court or at a special term of the supreme court in the judicial district in which the assessment complained of was made"; that, upon the presentation of such a petition, the justice or court may allow a writ of certiorari to the officers making the assessment to review such assessment, such writ to be returnable at a special term of the supreme court in the judicial district in which the assessment complained of was made.    The act that is to be reviewed is that of a state board, who have an office in the city of Albany; but there is nothing in the statute which requires that an official act of this state board, to be valid, must be done in the city of Albany, or that such official act shall be deemed to have been completed in that city; and it cannot be disputed but that the action of this state board would have been entirely valid if they had met in the city of New York, and there determined the value of the special franchises to be assessed for taxation.    There is nothing to show that the actual determination was not in the city of New York.    It is true that the board of tax commissioners are required to meet in its office in the city of Albany on a day specified in the notice to "hear and determine any complaint concerning such assessment" (Tax Law, Laws 1899, c. 712, § 44), but there is nothing in the act to prevent the board from adjourning to the city of New York, or to any other city of the state, and there making the determination; but when the determination is made, and the value of the special franchise to be assessed is ascertained, the state board make no assessment, but certify to the local assessors the amount that they have fixed as the value of the special franchise to be taxed, and the assessment is then made by the assessors entering such amount in the assessment list prepared according to the provisions of the statute; and then, when a person or corporation interested in this determination of the tax commissioners wishes to review their action, that review is to

be under the provisions of the law which allow the action of the local assessors to be reviewed "in the same manner and with the same force and effect as if the assessment had been made by the local assessors." If the assessment had been made by the local assessors, there could be no doubt but that the writ must be returnable at a special term of the supreme court held in the district in which the local assessors acted; and it would seem to follow that it was the intention of the legislature to prescribe that the proceedings for this review should be within the same district. I think this conclusion is directly in line with what was said by Judge Denio in Mygatt v. Washburn, 15 N. Y. 315: "When the statute speaks of the time when the assessment is made, it refers to the binding and conclusive act which designates the taxpayers and the amount of taxable property." Now, that binding, conclusive act is done when the assessors insert in the assessment roll the value of the special franchise to be assessed. Until that is done, the assessment is not complete. The local assessors have substantial duties in the apportionment of the amount fixed by the state board as the value of a franchise before the assessment becomes complete. Our attention is called to an opinion of the special term in the Fifth judicial district, which was followed by the special term, in which a different view is taken, but I cannot agree with the conclusion there stated.

My conclusion therefore is that the writ was properly made returnable in this district, and that the order appealed from should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.